UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | | |
|---|---|---|
| CRAIG KENDALL, | ) | CIV. 05-5066-JLV |
| | ) | |
| Plaintiff, | ) | ORDER DENYING BAUSCH & |
| | ) | LOMB'S MOTION TO EXCLUDE |
| vs. | ) | TESTIMONY AND |
| | ) | DENYING MOTION TO DISMISS |
| BAUSCH & LOMB INCORPORATED | ) | PLAINTIFF'S CLAIMS AND |
| and LASER VISION CENTERS, INC., | ) | CROSS-CLAIMS OF DEFENDANT |
| | ) | LASER VISION CENTERS, INC. |
| Defendants. | ) | |

**INTRODUCTION**

Defendant Bausch & Lomb ("B&L") filed a two-part motion to exclude the testimony of plaintiff's witnesses, Dr. David Hardten and Dr. Bormes, and to dismiss plaintiff's claims and the cross-claims of defendant Laser Vision Centers, Inc. ("LVCI"). (Docket 298). Following briefing, the issue is ripe for resolution by the court. For the reasons stated below, defendant's motions are denied.

**BACKGROUND**

Dr. Bormes was plaintiff's LASIK surgeon and Dr. Hardten became one of plaintiff's treating physicians following development of plaintiff's DLK.[1] Dr. Hardten subsequently was designated as one of plaintiff's expert witnesses.

---

[1]The court will not restate the underlying facts which are well known to all parties and will use the same acronyms used in previous orders.

(Docket 156). Dr. Hardten's opinions as an expert witness are thoroughly documented in a previous order and need not be restated. (Docket 307). B&L now moves to exclude the testimony of Dr. Hardten on three grounds:

1. As a sanction for spoliation;

2. As being unreliable expert testimony under Fed. R. Civ. P. 702; and

3. As superfluous.

(Docket 299). B&L seeks to exclude Dr. Bromes' testimony as a sanction for plaintiff's alleged spoliation. Id. Assuming B&L prevails on the expert witness motion, it seeks dismissal of plaintiff's claims and the cross-claims of LVCI. Id. The court will address each of B&L's motions separately.

## SPOLIATION

A.   Destruction of Dr. Hardten's file

B&L urges the court to invoke the sanction of exclusion of the physicians' testimony because (1) Dr. Hardten destroyed his file after his 2007 deposition; and (2) neither plaintiff nor Dr. Bormes nor Dr. Hardten can produce a letter from Dr. Bormes to Dr. Hardten. (Docket 299, p. 6).

"A spoliation-of-evidence sanction requires a finding of intentional destruction indicating a desire to suppress the truth." Greyhound Lines, Inc. v. Wade, 485 F.3d 1032, 1035 (8th Cir. 2007) (internal citation and quotation marks omitted). "The ultimate focus for imposing sanctions for spoliation of evidence is the intentional destruction of evidence indicating a desire to

suppress the truth . . . ." Id. "The evidentiary spoliation doctrine applies when there is intentional destruction of evidence, indicating fraud and a desire to suppress the truth." Menz v. New Holland North America, Inc., 440 F.3d 1002, 1006 (8th Cir. 2006) (internal citation omitted).

If the court finds "there is no evidence of intentional destruction of evidence to suppress the truth, then the district court also acts within its discretionary limits by denying sanctions for spoliation of evidence." Gallagher v. Magner, 619 F.3d 823, 845 (8th Cir. 2010). "There must be a finding of prejudice to the opposing party before imposing a sanction for destruction of evidence." Greyhound, 485 F.3d at 1035 (internal citation omitted).

At his 2010 deposition, Dr. Hardten testified he destroyed his file because he had not heard from plaintiff's counsel for some time and assumed the case had been resolved. (Docket 300-5, p. 7). Plaintiff reproduced all of Dr. Hardten's file so B&L could compare it against the production of the file throughout the course of discovery. (Docket 304, pp. 3-4). While B&L expresses indignation at the destruction of Dr. Hardten's file, it has not made a sufficient showing the destruction of the file was either intentional or intended to suppress the truth. Greyhound, supra; Menz, supra; and Gallagher, supra. B&L's motion to exclude the testimony of Dr. Hardten on this basis is denied.

B. <u>Destruction of Dr. Bormes' letter</u>

At his 2010 deposition, Dr. Hardten testified he was under the impression he had received a letter from Dr. Bormes relating to a culture of the autoclave (sterilizer) used in plaintiff's LASIK surgery. "I believe that was from Dr. Bormes in one of his letters in my original records and charts. That was my understanding at that point in time." (Docket 300-5, p. 23). It is the destruction of this letter which B&L argues warrants the exclusion of the testimony of not only Dr. Hardten but also Dr. Bormes. (Docket 299, p. 10).

A review of the record discloses Dr. Hardten is more likely than not mistaken about the existence of such a letter or the taking of a culture of the autoclave immediately prior to or after plaintiff's LASIK surgery. Ms. Shotwell, the LVCI technician who assisted Dr. Bormes with plaintiff's LASIK surgery, testified she sterilized the equipment before the first surgery of the day. (Docket 303-6, p. 4). Plaintiff admits the autoclave was not cultured after plaintiff's surgery. <u>Id.</u> at p. 10. B&L acknowledges the autoclave was not tested after plaintiff's LASIK surgery. "[A]*ll* the evidence deduced to this point demonstrated that the autoclave in Dr. Bormes office was *not* tested after Plaintiff's LASIK procedure." (Docket 299, p. 9) (emphasis in original). Finally, Dr. Hardten testified that under the circumstances of this case, whether the autoclave was or was not cultured was not significant in arriving at his ultimate opinion. (Docket 300-5, p. 24).

B&L wishes the letter existed because the jury could then conclude Dr. Bormes fabricated the evidence. (Docket 299, p. 10). However, the court finds there was no letter. Consequently, there was no spoliation, no intent to suppress the truth, and no prejudice to B&L.[2] Greyhound, supra; Menz, supra; and Gallagher, supra. B&L's motion to exclude the testimony of Dr. Hardten and Dr. Bormes on this basis is denied.

### EXPERT TESTIMONY UNDER FED. R. CIV. P. 702

B&L moves to exclude Dr. Hardten's expert testimony because "he did not perform a true differential diagnosis in arriving at his opinion." (Docket 299, p. 11). "Federal Rule of Evidence 702 provides for the admission of an expert opinion if it 'will assist the trier of fact to understand the evidence or to determine a fact in issue,' provided the expert is qualified to render the opinion and offers sufficient factual basis for [the] opinion, forms [the] opinion on reliable principles and methods, and applies these principles or methods to the facts of the case." In re Prempro Products Liability Litigation, 586 F.3d 547, 565 (8th Cir. 2009) (citing Rule 702). "Rule 702 reflects a 'relax[ation of] the traditional barriers to opinion testimony,' and the court's inquiry is intended to be flexible." Id. (citing Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 588 (1993) (internal quotations omitted)). "The district

---

[2]B&L will be entitled to cross-examine Dr. Hardten for impeachment purposes about this issue at trial.

court must assess whether the methodology used by the proposed expert is valid and whether it was properly applied." Id. "There is no single requirement for admissibility as long as the proffer indicates that the expert evidence is reliable and relevant." Id. (citing Unrein v. Timesavers, Inc., 394 F.3d 1008, 1011 (8th Cir. 2005)).

"[A] medical opinion about causation, based upon a proper differential diagnosis is sufficiently reliable to satisfy Daubert." Bland v. Verizon Wireless, (VAW) L.L.C., 538 F.3d 893, 897 (8th Cir. 2008) (internal citation omitted). A "differential diagnosis [is] a technique that identifies the cause of a medical condition by eliminating the likely causes until the most probable cause is isolated." Id. (internal citations omitted). "The final result of a differential diagnosis is the expert's conclusion that a defendant's product caused (or did not cause) the plaintiff's injury." Glastetter v. Novartis Pharmaceuticals Corp., 252 F.3d 986, 989 (8th Cir. 2001).

"A differential diagnosis begins with an expert's 'ruling in' plausible causes of an injury. . . . Then the expert 'rules out' less likely causes until the most likely cause remains. . . . While differential diagnoses are generally admissible, they should be excluded if they are scientifically invalid." Junk v. Terminix Intern. Co., 628 F.3d 439, 449 (8th Cir. 2010) (citing Kudabeck v. Kroger Co., 338 F.3d 856, 860-61 (8th Cir. 2003)). "Yet, this

6

requirement cannot be carried to a quixotic extreme.  Exemplifying this limitation, the U.S. Court of Appeals for the Third Circuit concluded that an 'expert's causation conclusion should not be excluded because he . . . has failed to rule out every possible alternative cause.' " Lauzon v. Senco Products, Inc., 270 F.3d 681, 693 (8th Cir. 2001) (citing Westberry v. Gislaved Gummi AB, 178 F.3d 257, 265 (4th Cir. 1999) (quoting Heller v. Shaw Industries, Inc., 167 F.3d 146, 156 (3d Cir. 1999)).

B&L claims that "[r]ather than systematically 'ruling in' all potential causes of Plaintiff's DLK and then systematically 'ruling out' those least likely to have caused Plaintiff's DLK, Dr. Hardten immediately fixated on biased information not specific to Plaintiff's procedure or condition and jumped to an unsupported conclusion." (Docket 299, p. 11).  B&L focused its argument on Dr. Hardten's original report.  Id. at p. 12.  Thus, B&L argues "Dr. Hardten's purported differential diagnosis is insufficient because it neither reliably rules in the B&L microkeratome blade as the cause of Plaintiff's DLK nor does it reliably rule out dozens of other potential causes." Id. at p. 13.

B&L fails to include Dr. Hardten's testimony at his depositions.  In 2007, Dr. Hardten testified he eliminated the other possible causes of plaintiff's DLK as part of his differential diagnosis.

> Q      Is it significant to you that it's the only common element, that being the Blade Lot 517984, in determining the cause of the DLK?

> A    Yes
>
> Q    And why is that significant?
>
> A    Well, if it's the only common element, then that means that that's what caused it. That's why it would be significant.
>
> Q    And is that similar to what we are talking about earlier regarding a differential diagnosis to determine a cause?
>
> A    Correct. You'd look at all the factors potentially that could contribute to DLK and if you rule out all the other ones and this one that was common to many other situations, then you would then conclude that it was the cause in that specific case.
>
> Q    And are your opinions . . . regarding the cause based on reasonable medical certainty?
>
> A    Yes

(Docket 303-3, p. 3).

At his 2010 deposition, Dr. Hardten again addressed the other potential factors which could cause DLK. Dr. Hardten testified:

> The other possible causes that I've considered? They would be other equipment utilized in the surgery. The most common . . . area in the surgery that is contaminated with bacterial endotoxin is the sterilizer [autoclave] and the sterilizer water. . . . the other items that have been reported or affiliated or thought to be affiliated with DLK but not specifically found to contain endotoxin . . . are the . . . povidone-iodine that is used to cleanse the eyelids, the Merocel . . . sponges that are used in the surgery. . . . [the metal] equipment that's utilized [in] the surgery . . . . it would be more a contaminant within the process of sterilization. The other instruments used in the surgery . . . could be potentially contaminated . . . . The other thing is that bacteria from the patient's eyelids . . . there could be endotoxin along the patient's eyelids.

(Docket 300-5, pp. 18-19).  B&L questioned Dr. Hardten about a number of other potential contaminates, including "balanced salt solution," "blade debris . . . or bacterial endotoxin," "a flat problem," "micro-keratome oil," and "environmental conditions . . . within the heating and ventilation system . . . . and air [quality] in the operating room."  Id. at pp. 20-23.  Dr. Hardten considered all of these potential contaminates in developing his differential diagnosis.  Id.

  B&L argues Dr. Hardten failed to properly consider the fact that Dr. Bormes' autoclave was not tested following plaintiff's LASIK surgery.  Dr. Hardten explains his analysis of that issue:

> Q And is the information that the water in autoclave was tested and was found to be negative of endotoxin of significance to you?
>
> A It's not the most significant item that I'm considering, no.
>
> Q Is it of any significance to you?
>
> A If we were trying to evaluate this one specific case, then that would be -- or a cluster within one office, that was ongoing, then that would be of significance, correct
> . . .
> I don't think we can rule out any specific cause.  I think that what we're doing is looking at the pattern of DLK and looking at it across a broad area . . . . in [plaintiff's] specific case, I think we can't rule out a specific etiology . . . . my conclusion that it was this blade lot is based upon broader information than just the one specific case of DLK of [plaintiff].

(Docket 300-5, pp. 24-25).  After a lengthy dialogue with B&L's counsel regarding the number of complaints of DLK from Blade Lot 5170984, Dr. Hardten testified "[t]he only thing that would change my opinion is if I were shown evidence that those incident reports were false or really related to a different blade lot . . . it really wasn't the blade lot used in [plaintiff's] case . . . ."  Id. at p. 27.

"After discounting obvious alternatives . . . [Dr. Hardten] need only be able to explain why other conceivable causes are excludable."  Lauzon, 270 F.3d at 694.  Dr. Hardten considered and ruled out the other potential causes of plaintiff's DLK and his opinions are expressed to a reasonable degree of medical probability.  See In re Prempro Products Liability Litigation, 586 F.3d at 567.  Dr. Hardten's differential diagnosis "should not be excluded because he . . . failed to rule out every possible alternative cause."  Lauzon, 270 F.3d at 693.  His opinions about causation are based on a "proper differential diagnosis . . . sufficiently reliable to satisfy Daubert."  Bland, 538 F.3d at 897.  B&L will have "the opportunity to expose the testimony's weaknesses through vigorous cross-examination and the presentation of contrary evidence."  In re Prempro Products Liability Litigation, 586 F.3d at 567 (citing Daubert, 509 U.S. at 596).

B&L's motion to exclude Dr. Hardten's expert testimony on this basis is denied.

**EXCLUDING TESTIMONY AS SUPERFLUOUS**

B&L argues "Dr. Hardten's opinion is inadmissible [as] . . . superfluous . . . . because there is nothing within his analysis that could not be performed by a lay person." (Docket 299, p. 19). B&L submits a lay person could read and understand the charts showing the high number of complaints of DLK made against Blade Lot 517984, rendering Dr. Hardten's testimony unnecessary. Id. Finally, B&L argues the "charts are nothing more than a distillation of inadmissible third-party complaints, the jury should not consider . . . with or without Dr. Hardten's testimony." Id.

Rule 703 provides, in pertinent part, "[i]f of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence in order for the opinion or inference to be admitted." Fed. R. Evid. 703. "Rule 703 evidence is not generally regarded as hearsay. . . . This type of evidence is never admitted for the truth of the matter asserted, but simply to show a basis for an expert's opinion." Barrett v. Acevedo, 169 F.3d 1155, 1163 n. 7 (8th Cir. 1999) (internal citation omitted). "[T]he evidence is not offered, nor admissible, for the fact of the matter therein asserted, but simply to indicate the information and material relied upon by the expert." Id. (internal citation omitted).

While a jury may not be permitted to consider the charts as substantive evidence, Dr. Hardten is entitled to consider the charts and the documented

11

complaints of DLK to assist him in forming his differential diagnosis and expert opinions.  See Sosna v. Binnington, 321 F.3d 742, 746 (8th Cir. 2003) ("Rule 703 permits an expert to 'rely on otherwise inadmissible hearsay evidence in forming his opinion if the facts and data upon which he relies are of a type reasonably relied upon by experts in his field.' ") (citing Arkwright Mut. Ins. Co. v. Gwinner Oil, Inc., 125 F.3d 1176, 1182 (8th Cir. 1997) (citing Fed. R. Evid. 703).

B&L's motion to exclude Dr. Hardten's testimony on this basis is denied.

## DISMISSAL OF COMPLAINT AND CROSS-CLAIM

B&L premises the motion on its belief the court will exclude the testimony of Dr. Hardten.  (Docket 299, p. 20).  Based on the rulings above, the motion to dismiss plaintiff's claims and the cross-claims of LVCI is denied.

## ORDER

Based on this analysis, it is hereby

ORDERED that Bausch & Lomb's motion (Docket 298) to exclude the testimony of Dr. Hardten and Dr. Bormes is denied.

IT IS FURTHER ORDERED that Bausch & Lomb's motion (Docket 298) for entry of judgment dismissing plaintiff's claims and the cross-claims of co-defendant Laser Vision Centers, Inc., is denied.

Dated March 17, 2011.

BY THE COURT:
/s/ *Jeffrey L. Viken*
JEFFREY L. VIKEN
UNITED STATES DISTRICT JUDGE
